UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARK GARNES,

                              Plaintiff,

          – against –

THE CITY OF NEW YORK *and*
HIGHWAY PATROLMAN
NIKODOMUS PETRONE,

                              Defendants.

**OPINION & ORDER**

22-cv-01769 (ER)

R̲a̲m̲o̲s̲,̲ ̲D̲.̲J̲.̲:̲

          Mark Garnes, proceeding *pro se*, brought this action against the City of New York
(the "City") and Highway Patrolman Nikodemus Petrone[1] ("Petrone," and together with
the City "Defendants"), alleging claims relating to a traffic stop and a subsequent arrest
for (1) false arrest and imprisonment, (2) denial of access to counsel, (3) malicious
prosecution, and (4) municipal liability.  Doc. 2.  Before the Court is Defendants' motion
for summary judgment dismissing all of Garnes' claims with prejudice.  Doc. 68.  For the
reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

## I.      BACKGROUND[2]

### A.  Factual Background

#### 1.  *Traffic Stop*

          On November 26, 2020, at approximately 2:00 a.m., Garnes was driving
northbound on the Major Deegan Expressway (the "Major Deegan") in the Bronx, New
York, at 45 to 50 miles per hour.  Doc. 2 ¶ 12; Doc. 70 ¶ 1.  At the time, due to road

---

[1] Nikodemus Petrone's name is misspelled in the case caption and filings.  The criminal complaint against
Garnes, which is signed by Petrone, notes that his name is Nikodemus Petrone, not Nikodomus Petrone.
Doc. 71-5.

[2] The following facts are drawn from Defendants' Rule 56.1 statement, Doc. 70, supporting exhibits, and
pleadings, and are undisputed unless noted otherwise.  The Court notes that although Garnes did not file a
Rule 56.1 statement, he did file an affidavit in support of his opposition to Defendants' motion for summary
judgment.  Doc. 75 at 54–63.

construction, the speed limit in the area was 40 miles per hour.  Doc. 71-2 (July 17, 2023 transcript of Garnes' deposition) at 7.

At the same time, Petrone and Officer Kevin Outlaw[3] of the New York City Police Department ("NYPD") were patrolling the Major Deegan in an undercover police vehicle, which looked like a yellow taxicab.  Doc. 70 ¶¶ 4–5; Doc. 71-8 (September 10, 2021 transcript from the examination of Garnes, pursuant to New York General Municipal Law 50-H) at 6–7.  Petrone observed that Garnes was speeding and weaving in and out of marked traffic lanes.  Doc. 71-3 (NYPD Arrest Report of Garnes, dated November 26, 2020) at 2.  Due to these observations, Petrone turned on the lights and sirens of the undercover police vehicle and pulled Garnes over.  Doc. 70 ¶ 8; Doc. 71-8 at 7.  The two vehicles came to a complete stop at the base of the 179th Street exit on the Major Deegan.  Doc. 70 ¶ 9; Doc. 71-8 at 4–5.

### 2.  *Breath Tests & Arrest*

After he was pulled over, Petrone asked Garnes why he was driving so erratically and whether he had been drinking.  Doc. 71-9 (Petrone's NYPD Body Worn Camera video, No. 2X81410656, from November 26, 2020) at 1:18–1:54.  In response, Garnes denied consuming any alcohol.[4]  *Id.* at 1:54–1:59.  Petrone observed that Garnes smelled of alcohol.  Doc. 71-1 (report of Garnes' refusal to submit to chemical test, dated November 26, 2020) at 2.  Garnes disputes that Petrone could smell alcohol, noting that he, Petrone, and Outlaw were all wearing masks.  Doc. 75 at 55–56.

Garnes subsequently agreed to take a preliminary breath test using a Portable Breath Test ("PBT") device.  Doc. 71-9 at 01:59–02:48; Doc. 71-4 (NYPD Arresting Officer Report – Intoxicated Driver Arrest, IDTU Case No. 2091-20-2048) at 2.  Garnes

---

[3] Outlaw is not a party in this action.  *See* Doc. 2.  On May 29, 2024, Garnes requested to add Outlaw as a party, and at a June 26, 2024 conference, the Court denied the request.  *See* Doc. 52.

[4] In their Rule 56.1 statement, Defendants assert that Petrone told Garnes that he could smell alcohol on him, citing to the transcript of Garnes' deposition conducted in July 2023.  *See* Doc. 70; Doc. 71-2. Although Garnes testified that Petrone told him that he could smell alcohol on him, Petrone's NYPD body worn video did not contain the referenced exchange.  *See* Doc. 71-9 at 1:18–1:59.

was directed to blow into the PBT device a total of four times.  Doc. 70 ¶¶ 14, 15; Doc. 71-2 at 9.  Because Garnes allegedly failed to follow instructions, the first three tests returned invalid readings.  Doc. 71-9 at 05:06–06:06.  Prior to the fourth time he was asked to blow, Garnes asked if he should call his attorney.[5]  *Id.* at 06:51–06:55.

On the fourth test, the device indicated that Garnes' blood alcohol level was 0.162 percent, which is more than twice the legal limit of 0.08 percent.  *Id.* at 08:32–09:04; Doc. 71-4 at 2; N.Y. Vehicle & Traffic Law ("VTL") § 1192.

Based on the test result, Petrone placed Garnes under arrest at approximately 2:13 a.m.  Doc. 70 ¶ 21; Doc. 71-9 at 08:46–09:30.  Garnes disputes that he was intoxicated and further argues that the PBT device seemed defective.  Doc. 75 at 55, 57.

### 3.  *Transport to 45th Precinct & Refusal to Take Additional Tests*

Garnes was placed in the back of the undercover police vehicle and transported to the 45th precinct[6] in the Bronx, New York for additional testing.  Doc. 70 ¶ 23; Doc. 71-9 at 13:03–13:26.

Once Garnes arrived at the precinct, he was taken to intake and was asked to provide his full name, address, and identification.  Doc. 75-1 at 76.  After Garnes went through the intake process, he was taken to the Intoxicated Driver Testing Unit, and was asked to submit to a chemical breath test.[7]  *Id.*; Doc. 71-1 at 2; Doc. 71–2 at 10–11; Doc. 71-6 (NYPD Highway District Intoxicated Driver Testing Unit, New York State

---

[5] In his affidavit, Garnes states that he requested to contact an attorney prior to his fourth test.  Doc. 75 at 60.  However, Petrone's NYPD body worn video clearly shows that Garnes only asked if he "should" call his attorney and did not explicitly request to contact an attorney.  *See* Doc. 71-9 at 06:06–08:08.

[6] There is conflicting information as to whether Garnes was taken to the 45th or 46th precinct.  The report of Garnes' refusal to submit to chemical test notes that he was at the 45th precinct at the time.  Doc. 71-1.  The arrest report of Garnes references both the 45th and 46th precincts.  Doc. 71-3.  Additionally, Rule 56.1 statement specifies that Garnes was taken to the 46th precinct for additional testing.  Doc. 70.  For consistency, the Court will refer to the precinct as the 45th precinct.  In any event, the precise precinct to which he was taken is not material to the Court's analysis.

[7] A chemical test is a test that uses blood, breath, urine, or saliva to measure the blood alcohol content of a person.  N.Y. VTL § 1194.  The pleadings and supporting exhibits provided do not specify what was different about the breath test at the 45th precinct compared to the breath test at the location of arrest.  *See* Doc. 71-1.

Evidential Breath Analysis Test, dated November 26, 2020) at 2.  At that point, Garnes asked why he needed to take an additional test when the PBT test result was above the legal limit,[8] and Petrone explained that more tests[9] were needed to confirm the PBT test result.  Doc. 71-2 at 13; Doc. 2 ¶ 17.  Garnes then requested to speak with an attorney, specifically David Zeitlin, and his request was denied.[10]  Doc. 71-2 at 11; Doc. 71-8 at 11–12; *see also* Doc. 75 at 58–59.  Garnes alleges that Petrone asked if he was refusing to take additional tests and that he responded that he was requesting to speak with an attorney to get clarity on the additional tests.  Doc. 2 ¶ 17.  Garnes was warned that his refusal to submit to a chemical breath test would result in the immediate suspension and subsequent revocation of his license, regardless of whether he was guilty of the charges for which he was arrested.  Doc. 71-2 at 12–13.  Garnes refused the chemical breath test at approximately 3:14 a.m.  Doc. 71-6 at 2; Doc. 71-7 (NYPD Highway District Intoxicated Driver Examination report, IDTU Case No. 2091-20-2048, dated November 26, 2020) at 2.

Garnes alleges that Petrone asked a list of questions on various forms regarding his refusal to submit to a chemical breath test and that after each question, he asked to speak to an attorney.  Doc. 2 ¶ 18.  Garnes alleges that Petrone drew a diagonal line on each form.  *Id.* ¶¶ 18, 34.  Although the arrest report only notes that he refused the chemical breath test, the Intoxicated Driver Examination report has diagonal lines with the word "Refuse" for the horizontal gaze nystagmus and coordination tests.  Doc. 71-3 at

[8] In his deposition, Garnes said that at the time he was asked to take an additional test, he was under the impression that the PBT test result was enough to confirm that he was intoxicated.  Doc. 71-2 at 13.

[9] In his deposition, Garnes said that his understanding was the Petrone was asking him to take three or four different tests and that that the additional tests were not breathalyzer tests, but "odd" tests.  Doc. 71-2 at 10.

[10] In Defendants' Rule 56.1 statement, Defendants do not reference Garnes' request to speak to an attorney after he was asked to submit to chemical testing.  *See* Doc. 70.  However, Defendants discuss the request in their memorandum of law in support of their motion for summary judgment and their reply.  Doc. 69 at 19–20; Doc. 80 at 12.  Defendants refer to the request as Garnes' "claimed request for an attorney at the 4[5]th precinct's Intoxicated Testing Unit."  Doc. 69 at 20.  Defendants also note that "it was reasonable for [] Petrone to believe that attempting to fulfill [Garnes'] request for an attorney would have further delayed administration of the chemical test, particularly in light of [Garnes'] ongoing refusal."  *Id.*

4

2; Doc. 71-7 at 2–3. After Garnes refused to submit to additional testing, he was fingerprinted, photographed, and placed in a holding cell. Doc. 75-1 at 77.

Garnes alleges that Petrone's conduct during the traffic stop, his arrest, and at the 45th precinct did not comply with various sections of the NYPD's rules and regulations or the NYPD patrol guide. Doc. 2 ¶¶ 38–43.

### 4. Charges & Transfer to Manhattan Central Booking

Garnes was charged with driving under the influence and refusal to take a breath test in violation of New York VTL §§ 1192(2) and 1194(1B).[11] Doc. 71-3 at 2. Section 1192(2) states, in relevant part, that a per se violation of driving while intoxicated is:

> [When a] person … operate[s] a motor vehicle while such person has .08 of one per centum or more by weight of alcohol in the person's blood as shown by chemical analysis of such person's blood, breath, urine[,] or saliva.

N.Y. VTL § 1192(2). Section 1194(1B) states, in relevant part, that:

> [E]very [motorist that] … has … operated [their vehicle] in violation of any of the provisions of this chapter shall, at the request of a police officer, submit to a breath test to be administered by the police officer … [and] [i]f such test indicates that such operator has consumed alcohol, the police officer may request such operator to submit to a chemical test[.]

N.Y. VTL § 1194(1B).

After being charged, Defendants assert that Garnes was then transferred to Manhattan Central Booking, and Garnes asserts that he was taken to Bronx County Central Booking at approximately 6:30 a.m.[12] Doc. 70 ¶ 27; Doc. 2 at 22; Doc. 75 at 61.

On the same day as the arrest, November 26, 2020, at approximately 3:00 p.m., a criminal court complaint was filed against Garnes by the Bronx County District

---

[11] In his opposition, Garnes argues that he did not refuse a breath test because he did the four breath tests during the traffic stop. Doc. 75 at 12. However, the refusal to take a breath test charge was regarding the refusal to take chemical breath test at the 45th precinct. Doc. 71-7 at 2.

[12] Although there is a dispute as to whether Garnes was taken to Bronx County Central Booking or Manhattan Central Booking, this disputed issue is not material to the Court's analysis.

Attorney's Office.[13]  Doc. 71-5 (Criminal Court Complaint, Bronx County, in the matter of the *People of the State of New York v. Mark Garnes*, Arrest #B20631179) at 2–3.  The complaint—which was signed by Petrone—charges Garnes with violations of § 1192.[14] *Id.*  Specifically, Garnes was charged with violating § 1192(1), driving while ability impaired, and § 1192(3), driving while intoxicated.  N.Y. VTL § 1192.  Garnes asserts that the complaint and its supporting documents contain false statements.  Doc. 75 at 6, 28–29.

Garnes alleges that his arraignment was the same day as the arrest at 7:00 p.m. and that he was subsequently released at 8:00 p.m.  Doc. 2 ¶ 23.

Garnes alleges that he was required to make two other court appearances, on January 27 and March 31, 2021.  *Id.* ¶ 23–24.   On his third appearance on March 31, 2021, approximately four months after his arrest, the complaint against him was dismissed.  Doc. 71-8 at 13.

Additionally, Garnes alleges that on March 29, 2021, he was originally scheduled for a "refusal hearing" with the Department of Motor Vehicles ("DMV") regarding his refusal to submit to an additional chemical test and that the hearing was rescheduled.  Doc. 2 ¶¶ 26, 27.  On March 30, 2021, the DMV informed Garnes that his license was revoked, effective March 29, 2021, because he refused to submit to a chemical test on November 26, 2020.  Doc. 75 (order of suspension or revocation by DMV) at 126.  Garnes alleges that at a hearing on July 12, 2021, Petrone failed to appear and that the administrative law judge reinstated his driver's license.  Doc. 2 ¶ 27; Doc. 75 at 62.

---

[13] In the complaint, Garnes alleges that he had a "legal aid attorney" for his arraignment on November 26, 2020.  Doc. 2 ¶ 23.  In Garnes' deposition on July 17, 2023, he noted that he temporarily had a public defender, but later retained the services of a private attorney, Bert Oberlander.  Doc. 71-2 at 17.

[14] The criminal complaint specifically alleged that Garnes operated a motor vehicle while his ability to operate such motor vehicle was impaired by the consumption of alcohol based on Petrone's observations. Doc. 71-5 at 2.  In the complaint, Petrone stated that he observed Garnes operating a vehicle at an excessive rate of speed and weaving in and out of lanes.  *Id.*  Petrone further stated that he observed Garnes to have bloodshot, watery eyes, and an odor of alcoholic beverage on his breath.  *Id.*  Petrone further stated that he was present at the administration of a chemical test analysis of Garnes' breath, and Garnes refused to take the test.  *Id.* at 3.

### B.  Procedural History

On March 2, 2022, Garnes filed the instant complaint against the City, Petrone, and the NYPD, asserting four claims:  (1) false arrest and imprisonment, (2) denial of access to counsel, (3) malicious prosecution, and (4) municipal liability.  Doc. 2.  On March 7, 2022, the Court dismissed Garnes' claims against the NYPD because an agency of the City of New York is not an entity that can be sued.  Doc. 5 at 2.

On August 16, 2023, the Court referred the parties to mediation, but the mediation was unsuccessful.  *See* Docs. 40, 48.  On May 14, 2024, after discovery was complete, Defendants filed a pre-motion conference letter requesting leave to file a motion for summary judgment, which the Court granted.  Docs. 50, 51.  On July 8, 2024, Garnes filed a discovery motion seeking to depose Petrone, Outlaw, and other municipal staff.  Doc. 63.  On July 17, 2024, the Court denied Garnes' request since "Garnes had multiple opportunities to raise these [discovery] requests[,] but failed to do so."  Doc. 65 at 2 (citing to *Naples v. Stefanelli*, No. 12-cv-4460 (GRB) (AYS), 2020 WL 5708717, at *2 (E.D.N.Y. Sept. 24, 2020) (denying request to reopen discovery as untimely where discovery had closed several months earlier and the parties were in the process of briefing summary judgment motions).  On July 26, 2024, Defendants moved for summary judgment to dismiss all of Garnes' claims with prejudice.  Doc. 68; *see also* Doc. 69.

## II.    LEGAL STANDARD

### A.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free School District*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might affect the outcome of the litigation under the governing law.  *Id.* at 454 (citing *SCR Joint Venture*, 559 F.3d at 137).  The party moving

for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Medical Center*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture, or surmise. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor." *Senno*, 812 F. Supp. 2d at 467–68 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986)).

### B. Pro Se Plaintiff

"A *pro se* litigant's papers must be construed liberally 'to raise the strongest arguments they suggest.'" *Jules v. Andre Balazs Properties*, No. 20-cv-10500 (LGS), 2023 WL 5935626, at *2 (S.D.N.Y. Sept. 12, 2023) (quoting *Publicola v. Lomenzo*, 54 F.4th 108, 111 (2d Cir. 2022)). The obligation to be lenient while reading a *pro se* plaintiff's pleadings "applies with particular force when the plaintiff's civil rights are at issue." *Jackson v. New York State Department of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). At the same time, "*pro se* status 'does not exempt a party from compliance with relevant

rules of procedural and substantive law.'" *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (citation omitted).

## III.    DISCUSSION[15]

Defendants seek to dismiss each of Garnes' four claims with prejudice.[16]  The Court will discuss each claim in turn.

### A.  False Arrest and Imprisonment Claim

*1.  Probable Cause*

 "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest [and false imprisonment],' whether that action is brought under state law or under [42 U.S.C.] § 1983." *Jenkins v. City of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996); *see Lewis v. Westchester County*, 20-cv-9017 (VB), 2021 WL 3932626, at *4 (S.D.N.Y. Sept. 1, 2021); *see also Morris v. Silvestre*, 604 F. App'x 22, 24 (2d Cir. 2015) (explaining that a confinement by police officers is "otherwise privileged" when it is supported by probable cause).

"Probable cause to arrest exists when the arresting officer has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to

---

[15] Garnes did not submit a Rule 56.1 statement, and instead filed an affidavit in support of his opposition. Doc. 75 at 54–63.  The Court will disregard the affidavit, in part, because, among other things, Garnes cannot possibly state with personal knowledge (1) what Petrone and Outlaw personally observed when they encountered his vehicle on November 26, 2020, (2) that Petrone could not have smelled alcohol on him, and (3) that the PBT device was not operational at the scene of arrest. *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012) (explaining that affidavits used during summary judgment must be based on personal knowledge and set out facts that would be admissible as evidence).  In addition, Garnes' memorandum of law is 52 pages long in violation of this Court's Individual Rules of Practice, which limit memoranda of law in opposition to 25 pages.  Garnes also did not request permission to file in excess of 25 pages. However, although Garnes has failed to comply with the applicable procedural rules, the Court has reviewed Garnes' filings to determine whether there exist material factual disputes. *Charles v. City of New York*, No. 07-cv-2782 (RJS) (GWG), 2011 WL 2936428, at *5 (S.D.N.Y. July 22, 2011) ([T]he Second Circuit has held that Rule 56 'does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.'").

[16] At various points, Garnes argues that the Court should not grant summary judgment because of additional discovery that could be helpful, e.g., deposition of Petrone. *See* Doc. 75 at 5, 23.  However, at this point, discovery has already concluded.  In fact, as already mentioned, Garnes' request to depose Petrone and others was denied by the Court on July 17, 2024.  Doc. 65.

warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (internal quotation marks and citation omitted).  When determining whether probable cause exists, courts are to "consider those facts *available to the officer* at the time of the arrest and immediately before it" and must render a decision based upon "the totality of the circumstances." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (citation omitted); *see also Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Jaegly v. Couch*, 439 F.3d 149, 153 (2d Cir. 2006) (citing *Devenpeck*, 543 U.S. at 153).  The test is "objective rather than subjective." *Id.* at 154 (citing *Devenpeck*, 543 U.S. at 152–53).  The existence of probable cause may be determined as a matter of law on summary judgment where there is no material dispute as to the relevant events and knowledge of the officers. *See Weyant*, 101 F.3d at 852.

Here, Garnes was charged in the criminal complaint with driving under the influence of alcohol in violation of New York VTL § 1192.  Doc. 71-5 at 2.  Defendants argue Petrone had probable cause to arrest Garnes for violating § 1192 because Garnes was operating a vehicle at the time and the PBT test result indicated that Garnes' blood alcohol level was at 0.162, placing him well over the legal limit.  Doc. 69 at 14.  Defendants further argue that Petrone also had probable cause to arrest Garnes for violating § 1194 because he observed Garnes driving in a reckless manner and smelled alcohol on his breath.[17]  *Id.* at 15.  Garnes argues that he was not intoxicated and, since they were both wearing masks, Petrone could not have smelled alcohol on his breath.  *See* Doc. 75 at 55, 57.[18]

---

[17] Although Defendants argued that there was probable cause to arrest for a violation of § 1194, the criminal complaint only includes charges for violations of § 1192.  Doc. 71-5.

[18] Garnes also argues that there is lack of probable cause because (1) certain evidence does not exist, including radar or dash camera footage, "hard copy" citations, summons, or tickets related to the traffic

The Court finds that the facts establish that Petrone had ample probable cause to arrest Garnes. Although Garnes challenges the accuracy of Petrone's observations, his conclusory assertions are insufficient to rebut Petrone's statements. Doc. 70 ¶¶ 11, 20; *see e.g.*, *Dobson v. Doughtery*, No. 17-cv-1014 (JLS) (MJR), 2020 WL 8167269, at *11–12 (W.D.N.Y. Sept. 23, 2020), *report and recommendation adopted sub nom. Dobson v. Dougherty*, No. 17-cv-1014 (JLS) (MJR), 2021 WL 131030 (W.D.N.Y. Jan. 14, 2021) (explaining that there was probable cause to arrest for a violation of § 1192 where a police officer had information that plaintiff left his designated traffic lane and observed that plaintiff had watery and red eyes and failed the walk-and-turn and one-leg-stand tests); *see also Bobolakis v. DiPietrantonio*, 523 Fed. Appx. 85, 87 (2d Cir. 2013) (explaining that there was probable cause to arrest for a violation of § 1192 where a 911 caller reported that plaintiff was swerving out of his lane and a police officer observed that plaintiff slurred his speech, had watery eyes, and had trouble completing sobriety tests, even where plaintiff passed a breathalyzer test and did not smell of alcohol). In fact, Garnes relies solely on his own testimony to challenge the accuracy of Petrone's observations. Courts in this District have held that "a [non-moving] party's self-serving statement, without direct or circumstantial evidence to support the charge, is insufficient to defeat a motion for summary judgment." *Adler v. Penn Credit Corp.*, No. 19-cv-7084 (KMK), 2022 WL 744031, at *9 (S.D.N.Y. Mar. 11, 2022) (quoting *Wheeler v. Kolek*, No. 16-cv-7441(PMH), 2020 WL 6726947, at *8 (S.D.N.Y. Nov. 16, 2020)) (granting

---

stop, and "chemical test video footage," and (2) of the manner in which certain NYPD documents were completed. *See* Doc. 75 at 10, 13, 14, 17. However, it is well-settled that there is no entitlement to have an investigation done in any specific manner. *See, e.g.*, *Harrington v. County of Suffolk*, 607 F.3d 31, 35 (2d Cir. 2010). In addition, Garnes cites to *Whitton v. Williams*, 90 F. Supp. 2d 420 (S.D.N.Y 2000) to support his argument that there is a lack of probable cause to arrest because there was no traffic citation. Doc. 75 at 27. However, in *Whitton*, the court held that there was sufficient support for the jury's determination that defendants arrested plaintiff for driving while intoxicated without probable cause because the plaintiff was arrested based on a state trooper's allegations that he smelled a strong odor of alcohol on the plaintiff and that plaintiff was driving erratically and the recommendation of other troopers to arrest plaintiff for driving under the influence. 90 F. Supp. 2d at 428. *Whitton* is distinguishable because the plaintiff was not asked to submit to any sobriety test, and here, Garnes was arrested only after his PBT test result was twice the legal limit. *See id.*

defendant's motion for summary judgment in spite of plaintiff's vague deposition testimony). Thus, the Court finds that Garnes' uncorroborated testimony is insufficient to raise an issue of material fact as to probable cause.

In addition, Garnes' refusal to submit to chemical testing at the 45th precinct after being warned of the consequences of refusing is admissible evidence of ongoing probable cause, from which a jury could conclude that Garnes was intoxicated.[19] *See e.g.*, *Hoyos v. City of New York*, 999 F. Supp. 2d 375, 390 (E.D.N.Y. 2013) (explaining that refusal to submit to a chemical test is admissible at trial, provided that the person was sufficiently warned of the consequences of refusing to take the test and persisted in the refusal); *People v. Beyer*, 799 N.Y.S.2d 620, 623 (3d Dep't 2005) ("The evidence of defendant's impaired condition and refusal to submit to a chemical test was sufficient to prove his intoxication."). Accordingly, Defendants' motion for summary judgment dismissing the false arrest and imprisonment claim is granted.

### 2. *Qualified Immunity*

The Court also finds that Defendants are entitled to qualified immunity. "The doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights ... or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." *Bradway v. Gonzales*, 26 F.3d 313, 317–18 (2d Cir. 1994) (internal quotation marks and citations omitted). "[A]n arresting officer is entitled to qualified immunity on a claim of false arrest … if either: (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met."

---

[19] Both parties reference *People v. Smith*, 965 N.E.2d 928 (2012). Doc. 69 at 13–14; Doc. 75 at 50–51. In *Smith*, the Court explained "where there has been a violation of the limited right to counsel [before taking a chemical test]…, any resulting evidence *may* be suppressed at the subsequent criminal trial. " 965 N.E.2d 928, 931–32 (2012) (emphasis added). However, here, the Court has not determined that there has been a violation of the limited right to counsel, so Garnes' refusal can be used as admissible evidence of ongoing probable cause.

*Carthew v. County of Suffolk*, 709 F. Supp. 2d 188, 203 (E.D.N.Y. 2010) (citing *Walczyk v. Rio*, 496 F.3d 139, 163 (2d Cir. 2007)); *see also Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 416 (2d Cir. 1999). The Second Circuit has defined the latter standard, commonly referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of [well-established] law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials—like other officials who act in ways they reasonably believe to be lawful—should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 202–03 (2d Cir. 2001) (internal quotation marks and citations omitted). The arguable probable cause standard is "more favorable to the officers" than the ordinary standard used to determine probable cause. *Ackerson v. City of White Plains*, 702 F.3d 15, 21 (2d Cir. 2012) (internal quotation marks and citation omitted); *see also Tompkins v. City of New York*, 50 F. Supp. 3d 426, 435 (S.D.N.Y. 2014). Only where an officer's "judgment was so flawed that no reasonable officer would have made a similar choice," is the denial of qualified immunity appropriate. *Provost v. City of Newburgh*, 262 F.3d 146, 160 (2d Cir. 2001) (citing *Lennon v. Miller*, 66 F.3d 416, 425 (2d Cir. 1995)).

The inquiry of whether the shield of qualified immunity applies is a mixed question of law and fact. *Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004). Where there is no material factual dispute, it is appropriate for the district court to assess the reasonableness of the defendants' conduct under the circumstances presented and to rule on qualified immunity at the summary judgment stage. *Lennon*, 66 F.3d at 421.

In light of the evidence previously described, Petrone is entitled to qualified immunity. Petrone had information he reasonably believed to be reliable, including his observation that Garnes was driving erratically and that Garnes' breath test result was

nearly twice the legal limit. *See* Doc. 71-3 at 2; Doc. 71-4 at 2. Thus, there was, at a minimum, arguable probable cause to believe that Garnes was driving under the influence of alcohol in violation of § 1192. *See Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003) ("Probable cause does not require absolute certainty … if police officers of reasonable competence could disagree as to whether there was probable cause, there is 'arguable' probable cause sufficient to warrant qualified immunity for the defendant officers."). Accordingly, Defendants' motion for summary judgment dismissing the false arrest and imprisonment claim may also be granted on this alternative basis.

### B. Malicious Prosecution Claim

#### 1. *Probable Cause*

"To establish a claim for malicious prosecution under New York law, a plaintiff must show '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 226 (S.D.N.Y. 2006) (quoting *Posr*, 180 F.3d at 417). In addition to these state law elements, a plaintiff must assert that there was "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment right[ ]" to be free of unreasonable seizure. *Id.* (quoting *Rohman v. N.Y.C. Transit Authority*, 215 F.3d 208, 215 (2d Cir. 2000)) (internal quotation marks omitted). Similar to claims of false arrest, probable cause is a complete defense for claims of malicious prosecution. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)). Yet the "probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury v. Wertman*, 721 F.3d 84, 95 (2d Cir. 2013) (citation omitted).

For purposes of malicious prosecution, the relevant determination of probable cause is not whether there was probable cause to arrest, but whether there was probable

cause "to believe that [the arrestee] could be successfully prosecuted." *Posr*, 180 F.3d at 417. "Probable cause does not require a 'certitude' that a crime has been committed by a suspect." *Brown v. City of New York*, 459 N.Y.S.2d 589, 591 (1st Dep't 1983) (citation omitted). "Rather, a malicious prosecution connotes a decision to proceed maliciously with the prosecution of an individual where probable cause is clearly lacking." *Id.* "If probable cause existed at the time of arrest, it continues to exist at the time of prosecution unless undermined by the discovery of some intervening fact." *Johnson v. Constantellis*, 221 Fed. Appx. 48, 50 (2d Cir. 2007) (internal quotations marks and citation omitted).

  "A police officer initiates criminal proceedings for purposes of a malicious prosecution claim by having the plaintiff arraigned, filling out complaining or corroborating affidavits, or signing a felony complaint." *Fiedler v. Incandela*, No. 14-cv-2572 (SJF), 2016 WL 7406442, at *10 (E.D.N.Y. Dec. 6, 2016) (citing *Llerando–Phipps v. City of New York*, 390 F. Supp. 2d 372, 382–83 (S.D.N.Y. 2005)). An arresting police officer may be held liable for malicious prosecution if he "creates false information likely to influence a jury's decision and forwards that information to prosecutors." *Cameron v. City of New York*, 598 F.3d 50, 64 (2d Cir. 2010) (internal quotation marks and citation omitted).

  Here, the facts establish the objective reasonableness of Petrone's belief that Garnes could be successfully prosecuted because the probable cause that existed at the time of arrest "continue[d] to exist at the time of prosecution." *Johnson*, 221 Fed. Appx. at 50. Garnes points to no intervening fact, beyond his own conclusory assertions, to undermine the existence of probable cause. *See Adler*, 2022 WL 744031, at *9. In addition, as previously discussed, Garnes' refusal to submit to chemical testing at the 45th precinct is admissible evidence of ongoing probable cause, from which a jury could conclude that Garnes was intoxicated. *See e.g.*, *Hoyos*, 999 F. Supp. 2d at 390 (E.D.N.Y. 2013); *Beyer*, 799 N.Y.S.2d at 623. Thus, Defendants are also entitled to summary judgment dismissing Garnes' malicious prosecution claim.

*2. Qualified Immunity*

The Court also finds that Defendants are entitled to qualified immunity as to the malicious prosecution claim. Qualified immunity applies to malicious prosecution claims if there is arguable probable cause to charge. *Tompkins*, 50 F. Supp. 3d at 435 (citing *Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir.2014)); *see also Richardson v. McMahon*, No. 22-582, 2023 WL 3102910, at *1–2 (2d Cir. Apr. 27, 2023). "Arguable probable cause to charge exists if there was arguable probable cause to *arrest* the plaintiff for the crimes in question, and no new information learned subsequent to the arrest made it manifestly unreasonable for the defendant officer to charge the plaintiff' with those crimes." *Tompkins*, 50 F. Supp. 3d at 435 (alterations adopted) (internal quotation marks omitted) (quoting *Jean v. Montina*, 412 Fed. Appx. 352, 354 (2d Cir.2011)); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 572 (2d Cir. 1996). The arguable probable cause standard is the same in the malicious prosecution context as it is in the false arrest context. *Richardson*, 2023 WL 3102910, at *1–2.

Here, arguable probable cause to charge exists because as the Court has already determined (1) there was arguable probable cause to arrest Garnes and (2) there was no new information learned subsequent to the arrest which made it manifestly unreasonable for Petrone to charge Garnes for violating § 1192. *See Tompkins*, 50 F. Supp. 3d at 435. Thus, since there is arguable probable cause to charge, qualified immunity also applies to Garnes' malicious prosecution claim. Accordingly, Defendants' motion for summary judgment dismissing the malicious prosecution claim may also be granted on this alternative basis.

### C. Denial of Access to Counsel Claim[20]

"[I]t has been firmly established that a person's Sixth … Amendment … right to counsel attaches only at or after the time that adversary judicial proceedings have been

---

[20] In his affidavit in opposition to the instant motion, Garnes states that he requested to contact an attorney prior to his fourth test during the traffic stop. Doc. 75 at 60. However, in his complaint, Garnes does not allege that he was denied access to counsel during the traffic stop. *See* Doc. 2 ¶ 34. Additionally, as

initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972).  However, when the underlying charges against a plaintiff are state law charges—as in this case—the Court will look to state law to determine when the adversarial judicial proceedings were initiated.  *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 349 (2d Cir. 1998).

Generally, New York State courts hold that "a criminal proceeding, and with it the right to counsel, is initiated by the filing of an accusatory instrument." *Id.* (citing *People v. Blake*, 320 N.E.2d 625, 631 (1974)).  In addition, the right to counsel attaches "if substantial rights of an accused may be affected by a particular proceeding." *Meadows v. Kuhlmann*, 812 F.2d 72, 76 (2d Cir. 1987).  In New York, such proceedings include "when a defendant [is] brought to the scene of a crime by court order, placed in a post-indictment lineup, or compelled to appear before a grand jury." *Deshawn E.*, 156 F.3d at 349–50 (citations omitted).

In addition, New York courts have determined that "a defendant facing a[] motor vehicle charge related to alcohol intoxication has a limited right to request legal consultation before consenting to a chemical test." *People v. T.J.*, 27 N.Y.S.3d 830, 834 (N.Y. Crim. Ct. 2016) (emphasis omitted) (citations omitted).  Courts specifically employ a two-step analysis to determine whether a defendant's limited right to an attorney has been infringed upon.  *People v. Stanciu*, 11 N.Y.S.3d 836, 842  (N.Y. Crim. Ct. 2015).  "First, the court must decide whether a defendant has asked for an attorney before responding to a request to take a chemical test." *Id.* at 842–43 (citations omitted).  "A defendant's request for counsel must be unequivocal and must inform the police that the defendant intends to retain counsel or consult with an attorney before making a decision with regards to his or her response to the chemical test." *T.J.*, 27 N.Y.S.3d at 834.  "If … the court finds that such request was made, then, in the second step of the analysis, the court must determine whether … fulfilling, or attempting to fulfill … the defendant's

previously noted, Petrone's NYPD body worn video clearly shows that Garnes only asked if he should call his attorney and did not request to contact an attorney. *See* Doc. 71-9 at 06:06–08:08.

request for an attorney would have unduly delayed administration of the chemical test. *Stanciu*, 11 N.Y.S.3d at 843 (citations omitted); *see also People v. Smith*, 965 N.E.2d 928, 931 (2012) ("[I]f a defendant arrested for driving while under the influence of alcohol asks to contact an attorney before responding to a request to take a chemical test, the police may not, without justification, prevent access between the criminal accused and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand.") (internal quotation marks and citations omitted).  "If the lawyer is not physically present and cannot be reached promptly by telephone or otherwise, the defendant may be required to elect between taking the test and submitting to revocation of his license, without the aid of counsel." *People v. Gursey*, 22 N.Y.2d 224, 229 (1968); *see also Smith*, 965 N.E.2d at 931–32.

The Court finds that there is a genuine issue of material fact as to whether Garnes has a claim for denial of access to counsel for his request for counsel prior to refusing to take the chemical breath test.  Garnes alleges that he specifically requested counsel prior to making his decision to refuse or consent to chemical testing.  *See Stanciu*, 11 N.Y.S.3d at 843 ("The defendant's multiple requests, directly in response to the officer's repeated insistence that the defendant answer 'yes' or 'no' to taking a chemical test, were sufficiently specific to indicate the defendant wanted to consult with an attorney prior to making his decision to refuse or consent to chemical testing.").  Here, Defendants do not argue that Garnes did not make an unequivocal request to consult with an attorney. Indeed, he requested to speak with a specific attorney.  However, they do argue that providing Garnes the opportunity to contact an attorney would have unduly delayed the administration of the chemical test.  Doc. 69 at 20; *see Smith*, 18 N.Y.3d at 549.  Based on the evidence submitted, Petrone did not appear to take any steps to enable Garnes to promptly reach an attorney, and Defendants simply argue that it was reasonable for Petrone "to believe that attempting to fulfill [Garnes'] request for an attorney would have further delayed administration of the chemical test, particularly in light of [Garnes']

18

ongoing refusal." Doc. 69 at 20.  However, Defendants do not further elaborate on

Garnes' "ongoing refusal" beyond his request to speak to an attorney.

Although "[a]lcohol dissipates rapidly in the body and therefore a breath test is

time sensitive …[,] the process of consultation need not be a lengthy process."  *People v.*

*Nieves*, No. 2016QN009031 (AED), 2016 WL 3869792, at *4 (N.Y. Crim. Ct. 2016)

(citations omitted); *see also Gursey*, 22 N.Y.2d at 229.  "[T]he right to seek the advice of

counsel—typically by telephone—could be accommodated in a matter of minutes and in

most circumstances would not substantially interfere with the investigative procedure."

*Smith*, 18 N.Y.3d at 549.  Here, Defendants have not sufficiently demonstrated that

giving Garnes the opportunity to consult with counsel, who he specifically named, would

have caused an undue delay in the administration of the chemical test.  Accordingly,

Defendants' motion for summary judgment dismissing the denial of access claim is

denied.

### D.  Municipal Liability Claim

Garnes alleges that the City is liable for his *Monell* claim under 42 U.S.C. § 1983

because Petrone falsely arrested him, denied him access to counsel, and violated the

NYPD's rules and regulations and NYPD's patrol guide.[21]  Doc. 2 ¶¶ 38–43.

"Congress did not intend municipalities to be held liable [under § 1983] unless

action pursuant to official municipal policy of some nature caused a constitutional tort."

*Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 691 (1978).

A municipality cannot be held liable under § 1983 solely on a theory of respondeat

superior.  *Coon v. Town of Springfield*, 404 F.3d 683, 686–87 (2d Cir. 2005) (citing

*Monell*, 436 U.S. at 694); *see also Hunter v. Town of Mocksville*, 897 F.3d 538, 553 (4th

Cir. 2018) (explaining that "a municipality cannot be held liable *solely* because it

---

[21] In his opposition, Garnes raises for the first time that the City had a policy related to "ghost plates" which he alleges has led to a disproportionate number of car stops, including his, amongst various minority groups.  Doc. 75 at 47, 60.  However, Garnes did not mention the "ghost plates" policy in his complaint, so the Court will not consider the policy as a basis for his *Monell* claim.  Doc. 2 ¶¶ 38–43.

employs a tortfeasor") (internal quotation marks and citation omitted).  A § 1983 claim

can only be brought against a municipality if the action that is alleged to be

unconstitutional was the result of an official policy or custom.  *Coon*, 404 F.3d 683 at

686–88; *see also Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) ("A municipality or

other local government may be liable under []section [1983] if the governmental body

itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected'

to such deprivation.") (quoting *Monell*, 436 U.S. at 692).

The Second Circuit has established a two-pronged test for § 1983 claims brought

against a municipality.  First, the plaintiff must prove "the existence of a municipal policy

or custom in order to show that the municipality took some action that caused his injuries

beyond merely employing the misbehaving [official].'"  *Johnson v. City of New York*,

No. 06-cv-9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting

*Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff

must establish a causal connection between the policy or custom and the alleged

deprivation of his constitutional rights.  *Id.*

To satisfy the first requirement, a plaintiff must prove the existence of:  (1) a

formal policy which is officially endorsed by the municipality; (2) actions taken or

decisions made by government officials responsible for establishing municipal policies

which caused the alleged violation of the plaintiff's civil rights; (3) a practice so

persistent and widespread that it constitutes a custom or usage and implies the

constructive knowledge of policy-making officials; or (4) a failure by official policy-

makers to properly train or supervise subordinates to such an extent that it amounts to

deliberate indifference to the rights of those with whom municipal employees will come

into contact.  *Moray v. City of Yonkers*, 924 F. Supp. 8, 12 (S.D.N.Y. 1996) (internal

quotation marks and citations omitted).

Although a plaintiff is not required to identify an express rule or regulation to

establish a *Monell* claim, proof of "a single incident alleged in a complaint, especially if

20

it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d. Cir. 1998) (quoting *Ricciuti v. New York City Transit Authority*, 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 127 (1988) (plurality opinion) (explaining that only municipal officials who have "final policymaking authority" concerning the particular activities giving rise to a plaintiff's claims "may by their actions subject the government to § 1983 liability") (citation omitted).

Here, Garnes has not demonstrated an underlying constitutional violation as to the false arrest and imprisonment claim, so his *Monell* claim as to that alleged violation fails. As to the denial of access to counsel claim, Garnes has not demonstrated that Petrone's actions were a result of an official policy or custom, so his *Monell* claim as to this alleged violation also fails.  Lastly, Garnes' claim that Petrone violated the NYPD's rules, regulations, and patrol guide also fails as a matter of law because "[a] violation of the [p]atrol [g]uide or departmental policy does not, in and of itself, amount to the violation of a right protected by the Constitution or federal law."  *Rizk v. City of New York*, 462 F. Supp. 3d 203, 220 (E.D.N.Y. 2020) (citation omitted).

In his opposition, Garnes relies on *Floyd v. City of New York*, 959 F. Supp. 2d. 540 (S.D.N.Y. 2013) to support his *Monell* claims.  *See* Doc. 75 at 45–49.  In *Floyd*, the Court concluded that the City was liable under the Fourth Amendment based on two theories, either of which was adequate under *Monell*:  (1) "plaintiffs showed that senior officials in the City and at the NYPD were deliberately indifferent to officers conducting unconstitutional stops and frisks" and "(2) plaintiffs showed that practices resulting in unconstitutional stops and frisks were sufficiently widespread that they had the force of law."  959 F. Supp. 2d. at 658.  The Court also concluded that the City was liable under the Fourteenth Amendment under two theories, either of which was adequate under *Monell*, because (1) "plaintiffs showed that the City, through the NYPD, ha[d] a *policy* of

indirect racial profiling based on local criminal suspect data" and (2) "plaintiffs showed that senior officials in the City and at the NYPD [had] been *deliberately indifferent* to the intentionally discriminatory application of stop and frisk at the managerial and officer levels." *Id.* at 660. Here, however, *Floyd* is distinguishable because Garnes does not establish that he was stopped by Petrone due to an official policy or custom. Additionally, *Floyd* is inapplicable because the Court has determined that there was probable cause to arrest and prosecute Garnes, dismissing the alleged Fourth Amendment claim. *See* Doc. 2. *Floyd* was also based on extensive factual record, and here, Garnes did not conduct any discovery related to his *Monell* claims and did not proffer any admissible evidence to support his *Monell* claims. *See* Doc. 80.

At this stage, on summary judgment, it is crucial that Garnes comes forward with admissible evidence that a municipal policy or custom was the moving force behind the actions that allegedly injured him. However, Garnes only provides inadmissible evidence—specifically a newspaper article from July 2022[22] and a report from New York Law School from February 2020[23] to support his *Monell* claims. None of the documents Garnes relies on were previously disclosed or identified to Defendants during the course of discovery as required under Federal Rules of Civil Procedure 26, 33, and 34. *See* Doc. 80 at 14. Moreover, "[n]ewspaper articles are generally inadmissible hearsay," and because Garnes offers no basis for their admissibility, such articles cannot be used to defeat summary judgment. *Carmichael v. City of New York*, 34 F. Supp. 3d 252, 259 n.5 (E.D.N.Y. 2014) (citations omitted); *see also, e.g.*, *Outerbridge v. City of New York*, No. 13-cv-5459 (AT) (DCF), 2015 WL 5813387, at *4 (S.D.N.Y. Sept. 30, 2015) ("The

---

[22] The newspaper article, titled "Transcript: Mayor Eric Adams Announces Crackdown on Vehicles with Illegal License Plates," discusses NYPD cracking down on illegal license plates, which includes fake paper license plates. Doc. 75 at 108–13.

[23] The excerpts provided from the New York Law School report, titled "DRIVING WHILE BLACK AND LATINX: Stops, Fines, Fees, and Unjust Debts," discuss that people of color are disproportionately at risk for driver's license suspensions and that people of color are disproportionately subjected to traffic stops. Doc. 75 at 114–118.

newspaper articles submitted by Plaintiff cannot serve as evidence of the City's municipal policy or custom."). The report from New York Law School is also inadmissible hearsay because it is being offered by Garnes for its truth, so it cannot be used to oppose summary judgment. *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919, 924 (2d Cir. 1985).

Accordingly, because Garnes' *Monell* claim fails, Defendants' motion for summary judgment on this claim is granted.

## IV.    CONCLUSION

For the reasons set forth above, Defendants' motion is GRANTED in part and DENIED in part. The parties are directed to appear for a conference on March 13, 2025 at 10:00 a.m. in Courtroom 619 of the Thurgood Marshall United States Courthouse, 40 Foley Square, New York, NY 10007. The Clerk of Court is respectfully directed to terminate the motion, Doc. 68.

It is SO ORDERED.


Dated:    February 25, 2025
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.